### Lessee of WEITZELL *et al. v.* FRY.

#### *Parol evidence.—Judicial sale.*

Where land mortgaged to the trustees of the general loan-office, has been sold by the sheriff of the county, under an alleged precept from the state treasurer, issued by virtue of the act of 1st April 1790, and the writ has been lost, parol evidence of it is admissible.

The requisition of the act, that advertisements of the sale shall be posted at some public places, is merely directory to the sheriff, and where there has been no actual injury, it will not affect the title of a *bonâ fide* purchaser.

If a man who forbids a sale, or slanders a title, become himself the purchaser of the land, it is always, *primâ facie*, a mark of unfairness; and inadequacy of price, though not conclusive to avoid a sale, affords an argument of great weight, against a purchaser to whom fraud is imputed.

EJECTMENT, for 306 acres of land in Northumberland county. The case was this : On the 13th of September 1774, John Read, being seised in fee, mortgaged the premises mentioned in the declaration, to "The trustees of the general loan-office of the province of Pennsylvania," incorporated under *219] the act of the 26th of February 1773. (1 Dall. Laws, 644.) *After various successive modifications of this trust,(b) the powers and duties of the trustees were transferred to, and vested in the treasurer of the state, by an act of the first of April 1790. 2 Dall. Laws, 792, § 9.(c) The sheriff of the county, in his testimony on the trial, stated, "that he had received a precept, dated in September 1792, for selling the lands, under Reed's mortgage, from the office of Mr. Febeiger, the state treasurer ; that the precept, he believed, was signed by Mr. Febeiger, and attested by Mr. Ingersoll, the attorney-general ; that he delivered the precept to Mr. Febeiger's clerk (who, it appeared, had left the country), indorsed, he believed (though he was not positive), with a written return, as it was his practice to make such indorsements ; that he thought he had put up printed advertisements of the time and place of sale ; and that he made the sale on the premises." It was proved, however, that on a strict search of the loan-office papers, no precept, in the present case, could be found, except one, which had no date, and which was not signed by Mr. Febeiger. And an advertisement of the sale, to be made on the 11th of December 1792, was read from the Sunbury and Northumberland Gazettes, dated the 6th of October preceding. At the sale, Thomas Reese became the purchaser, to whom the sheriff made a deed, on the 22d of February 1793, for the consideration of 189*l.* 7*s.* 6*d.*, and on the

---

(a) See Belt's Lessee *v.* Levers, *ante.* p. 210.

(b) See the note subjoined to the act above cited. 1 Dall. Laws, 644.

(c) By an act of the 11th of April 1793, a grant was made to the Pennsylvania Hospital, payable out of the money due to the loan-office; and the managers of the hospital were constituted trustees for the purpose of collection. 3 Dall. Laws, 379.

Weitzell v. Fry.

20th of March 1793, Reese conveyed to the lessors of the plaintiff, for the consideration of 160*l*. But it was alleged by the defendants, and evidence was given tending to show, that Reese had been collusively employed by Richeson, one of the lessors of the plaintiff (the others being totally ignorant of this part of the transaction), to make the purchase for him, while, at the time of the sale, he set up a title to the premises, producing a deed from the county commissioners, dated the 25th of November 1792, when the land had been sold for taxes ; menacing any purchaser with a law-suit ; and in fact, prevented several persons from bidding, who had attended for that purpose ; and some of whom avowed, that they would give 350*l*. for only 200 acres of the land.

On these facts, the *defendant* contended : 1st. That the authority of the state treasurer was a special authority, and ought to be strictly pursued : whereas, there was no official precept, as required by the act, to justify the sheriff's sale ; nor any proof of advertisements put up at public places.  2d. That the fraud committed by Richeson, at the time of sale, vitiated the whole proceedings ; particularly, when connected with the inade- [*220 quacy *of the price.  Cowp. 26 ; Hale Hist. Com. Law, 49 ; Cowp. 434 ; 2 Pow. Cont. 144, 163 ; 1 Bro. Chan. 163.

The *plaintiff's* answered, that the weight of the evidence was in favor of the regular advertisement of the sale ; that the blank precept, now produced, could not have been the precept under which the sheriff acted, as he swears that his precept was signed by the treasurer, and attested by the attorney-general ; that the loss of the precept being evident, its existence and regularity are legally proved by the sheriff ; that it might, perhaps, be contended, that the production of a written precept was not indispensable in this case (1 Ld. Raym. 166 ; 5 Mod. 387 ; 2 Salk. 467) ; that Richeson was bound to give notice of the commissioners' deed, whatever effect it produced on the sale ; that this was the only ground to impeach the sale ; and that fraud ought not to be presumed.

SHIPPEN, Chief Justice.—There are two points of inquiry before the court and jury : 1st. Whether the proceedings upon the sale have been regular ?  2d. Was there such an act of fraud, unfairness or contrivance, at the time of the sale, as ought to vitiate the whole transaction ?

1st. It is alleged, on the first point, that there was no precept authorising the sale ; and it is proved, that, on search, a regular precept has not been found in the treasurer's office.  We think, that a precept was necessary to support the sale ; and that the paper which has been produced, was not a regular precept.  But on the other hand, the sheriff swears, that he received a precept, signed by the treasurer ; and it is not probable, that he would have sold an estate under a blank form.  As therefore, the party has not the custody of the precept, and ought not to be made responsible for its loss ; the jury will consider, whether there is not sufficient evidence, to presume the existence of a regular precept, at the time of the sale.

It has also been urged, that there is no proof, that advertisements of the sale were posted up at public places ; but if the sale was a fair one, we regard this, as a very feeble objection.  The act of making such advertisements, is the duty of the sheriff ; it is a matter merely directory ; and unless

an actual injury has been sustained by an omission, it would be hard, indeed, that it should affect the title of a *bond fide* purchaser.(*a*)

2d. The chief ground of defence, however, is the allegation of fraud at the sale; and if Richeson did then attempt to get the land unfairly, he ought not to be allowed to benefit by his iniquity. It is always a mark, *primâ fucie*, of unfairness, when a man who forbids a sale, or slanders a title, becomes himself the purchaser of the land. It is true, that Richeson might be bound to give notice of the commissioners' deed; but did he confine himself to giving a fair notice of the claim, without any sinister design, *or conversation or action, to depreciate the estate, and to secure it for himself at an undervalue? No, he employed another person, secretly, to bid for him, while he deceitfully threatened his own bidder, and seriously threatened every other bidder, with a law-suit. And wherever there is an appearance of fraud, the inadequacy of price, though not conclusive, in itself, to avoid a sale, affords an argument of great weight against a purchaser to whom the fraud is imputed.[1]

*221]

Here, then, it is important, to remark, that from the special nature of the proceeding under the treasurer's precept, the defendant had no opportunity of applying to any court for immediate relief : but we do not hesitate to declare, that if a case were brought before us, under such circumstances, we should certainly set aside the sale.

It now, however, becomes the province of the jury to decide upon the evidence, whether Richeson's conduct was fair and proper ; without a sinister view to get the land at an under price. If they think it was, the verdict will be in his favor. If they think otherwise, the defendant must prevail.

Verdict for the defendant.(<i>b</i>)

---

(*a*) Where there is a mere error of judgment, by public commissioners, in the construction of an act of assembly, without fraud, or a pretence for imputing fraud ; a sale by them, under the act, will not be vitiated, as against a *bond fide* purchaser, for a valuable consideration, without notice of any irregularity or omission on the part of the commissioners. King *v.* Stow, 6 Johns. Ch. 323.

(*b*) Tried in the circuit court, Northumberland county, on the 17th of October 1800, before Shippen, C. J., and Brackenridge, J.

(*c*) Tried at Pittsburgh *nisi prius*, October 1800, before Yeates and Smith, Justices.   s. c. 3 Yeates 61, 2 Sm. Laws 209, where the case is better reported.

[1] s. p. Carson's Sale, 6 Watts 140; Swire *v.* 1 Pitts. 537; Tripp *v.* Silkman, 29 Leg. Int Brotherline, 41 Penn. St. 135; Lewis' Petition,   29; Erb's Estate, 2 Pears. 160.